## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:

Waldorf Nevens Cleaners, Inc.,

                        Debtor.

Case No. 15-40067

Chapter 11

---

## NOTICE OF EXPEDITED HEARING AND MOTION TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES

---

TO: ALL PARTIES IN INTEREST SPECIFIED IN LOCAL RULE 9013-3(a)(2).

1.     Waldorf Nevens Cleaners, Inc. ("Debtor"), by and through its undersigned attorney, moves the court for the expedited relief requested and gives notice of hearing herewith.

2.     The court will hold a hearing on this Motion at 10:00 a.m. on Tuesday, May 19, 2015, before the Honorable Michael E. Ridgway, Courtroom 7 West, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.  **THE HEARING MAY BE CONTINUED BY THE COURT AT THE TIME OF THE HEARING WITHOUT ADDITIONAL NOTICE.**

3.     Any response to this Motion must be filed and delivered not later than Monday, May 18, 2015 at 10:00 a.m. which is 24 hours before the time set for the hearing (including Saturdays, Sundays, and holidays).  **IF OBJECTIONS ARE NOT SERVED AND FILED IN A TIMELY MANNER, THE COURT MAY GRANT THE REQUESTED RELIEF WITHOUT A HEARING IN ACCORDANCE WITH LOCAL RULE 9013-2(f).**

4.     This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1.  Venue of this case and the motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding.  The

petition commencing this Chapter 11 case was filed on January 9, 2015 (the "Petition Date").

The case is now pending in this Court.

5.    The motion arises under 11 U.S.C. §§363 and 365, Federal Rules of Bankruptcy

Procedure 2002, 6004 and 6006, and Local Rule 4001-2.  The motion is filed under Bankruptcy

Rule 9014 and Local Rules 9013-1 through 9013-3.

6.    On the Petition Date, Debtor filed a voluntary petition for relief under Chapter 11

of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota.

7.    Debtor continues to operate its business and manage its property as debtor-in-

possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

8.    An Official Committee of Unsecured Creditors has not been appointed in the

Debtor's Chapter 11 case.

9.    The Debtor, by this motion, proposes to enter into two sales transactions with two

different buyers.

10.    By this Motion, the Debtor proposes to sell certain retail and commercial dry

cleaning routes to Mulberrys, LLC, a Delaware limited liability company ("Buyer").  The sale is

proposed to be free and clear of liens, claims and encumbrances pursuant to 11 U.S.C. §363(f).

The Debtor and the Buyer have entered into an Asset Purchase Agreement, a copy of which is

attached to this Motion as **Exhibit 1.**  The sale of the Debtor's dry cleaning routes is for the sum

for Four Hundred Thousand and 00/100 Dollars ($400,000.00) cash.  Closing is to occur one (1)

day subsequent to Court approval of this Motion.  The accounts receivable with respect to the

Debtor's customers are to be pro-rated between the Debtor and the Buyer as of the date of

closing.  There are no executory contracts involved in the transaction or the assets to be sold.

The Debtor's revenues for 2014 from the operation of these routes, was approximately $615,000.00.

11.    The assets proposed to be sold by the Debtor as described in paragraph 10 above are subject to certain tax liens and a judgment and blanket security interest in favor of Associated Bank. As can be seen from the Asset Purchase Agreement, the Debtor is required to enter into a Non-Compete Agreement. The Debtor values the Non-Compete portion of the Asset Purchase Agreement purchase price to be $200,000.00. The Debtor does not believe that those proceeds would be subject to liens, judgments or security interests.

12.    In addition to the sale described above, the Debtor proposes to sell a retail location, and customer records associated with this location to St. Anthony Cleaners, LLC. The buyer is located at 3007 – 37th Avenue NE, St. Anthony, MN 55421. The Debtor's retail location is:  111 West Grant Street, Minneapolis, MN 55403. The Debtor rents this space on a month-to-month basis. It is a retail location only. The asset being sold is the Debtor's counter and the ability to operate from this location and the Debtor's business records associated with this location. The Debtor rents the location on a month-to-month basis. The Debtor does not believe that the assets being sold to St. Anthony Cleaners, LLC are subject to tax liens or the security interest held by Associated Bank.  The 2014 revenue from the Grant Street retail location was approximately $95,000.00. The sale price is $85,000.00 for the Debtor's retail location. The purchase price is allocated at $1,000.00 to equipment and $84,000.00 to good will. The purchase price is to be paid by the Buyer making a $20,000.00 down payment and paying the balance over 48 months at $1,354.17 per month. The installment payments to be made by the Buyer will accrue no interest. The Buyer and Seller are currently signing an Asset Purchase Agreement which will be filed with the Court prior to the hearing on this motion.

13.     The Debtor believes that both sales are in the best interests of creditors and the
Debtor's estate.  The Debtor has offered these assets for sale to other potential buyers without
generating acceptable offers.

14.     Bankruptcy Rules 6004(h) and 6006(d) provide that orders authorizing the sale of
property are stayed until the expiration of ten (10) days after the entry of an order approving a
sale.  Time is of the essence in approving the instant sale and, accordingly, the Debtor seeks an
order from this court providing that any stays imposed by Bankruptcy Rules 6004(h) and 6006(d)
be deemed waived.

15.     The Debtor has provided all creditors and other parties of interest with notice of
the proposed sale pursuant to Rule 2002(a).  Cause exists to hear this matter on an expedited
basis.  Both purchasers are insisting that the transaction be approved by the Court and closed as
quickly as possible.  Both purchasers have voiced concerns over waiting for a lengthy approval
process.  In addition, the Debtor has suffered cash flow difficulties since filing Chapter 11.  The
Debtor has fallen behind on Debtor-In-Possession obligations and operating expenses.  Approval
of this sale will allow the Debtor to get current on its Debtor-In-Possession obligations.
Approval of this sale on an expedited basis will also enable the Debtor to move forward with a
Plan of Reorganization.  The Debtor anticipates cost savings will be immediately generated as a
result of Court approval of these sale transactions, including insurance, payroll and other
overhead expense items.  The Debtor's revised projections, post-sale, shows the Debtor
averaging approximately $181,000.00 per month in revenue and projected monthly expenses of
$172,600.00.

16.     Subsequent to the sale, the Debtor will continue to operate its retail dry cleaning
and commercial laundry operations from its current place of business.

17.     By this motion, Debtor requests that the Court enter an order, a proposed form of which has been filed, which approves the following relief:

(a) Authorizing  Debtor to sell its laundry and dry cleaning routes as specified in the Asset Purchase Agreement to the Buyer pursuant to 11 USC §363, the Debtor be authorized to conduct the sale free and clear of all liens, claims, encumbrances and interests;

(b) Approves the terms of the Asset Purchase Agreement between the Debtor and Mulberrys;

(c) Waiving the requirements of Bankruptcy Rules 6004(g) and 6006(d);

(d) Authorizing the Debtor to execute any additional documentation or to take other action that is necessary to effectuate and consummate the Asset Purchase Agreement;

(e) Ordering the Debtor to hold $200,000.00 of the Mulberrys purchase price pending further Order of this Court;

(f) Authorizing the Debtor to sell its retail location located at:  111 West Grant Street, Minneapolis, MN 55403 to St. Anthony Cleaners, LLC, pursuant to 11 U.S.C. §363, and that the Debtor be authorized to conduct the sale free and clear of all liens, claims and encumbrances;

(g) Approving the terms of the Asset Purchase Agreement between the Debtor and St. Anthony Cleaners, LLC, a copy of which will be filed with the Court prior to the hearing on this motion; and

(h) Granting such other and further relief as the Court may deem just and equitable.

18.     Pursuant to Local Rule 9013-2(c), the Debtor indicates that should testimony be necessary, it intends to call John Zahhos to testify in support of this Motion.

**WHEREFORE**, Debtor respectfully requests that this Court enter an order

a.    substantially in the form of the proposed order attached hereto;

b.    granting such other and additional relief as the Court deems just and appropriate.

Respectfully submitted,

Dated: May 12, 2015.    /e/ Steven B. Nosek
Steven B. Nosek (79960)
2855 Anthony Lane South, #201
St. Anthony, Minnesota  55418
(612) 335-9171

Attorney for Debtor

VERIFICATION

I, John Zahhos, President of the Debtor named in the foregoing pleading, declare under penalty of perjury that the foregoing pleading is true and correct according to the best of my knowledge, information and belief.

Dated: _5 - 12 -15_                              ___John Zahhos___

                                                 John Zahhos, President

# ASSET PURCHASE AGREEMENT

THIS AGREEMENT ("Agreement") is made and entered into this _____ day of _____, 2015, between Mulberrys, LLC, a Delaware limited liability company ("Buyer") and Waldorf Nevens Cleaners, Inc., a Minnesota corporation ("Seller").

WHEREAS, Seller is engaged in the business of retail and commercial dry cleaning and laundry (the "Business"); and

WHEREAS, Seller is a Debtor-in-Possession in a Chapter 11, BKY No.: 15-40067, filed January 9, 2015, in the United State Bankruptcy Court and a Motion to Sell Assets Free and Clear of Liens, Claims and Encumbrances will be filed in the Bankruptcy Court upon execution of this Agreement, which Motion shall seek Bankruptcy Court approval of the transaction contemplated by this Agreement; and

WHEREAS, Buyer desires to buy, and Seller desires to sell the dry cleaning and laundry routes and goodwill associated therewith as used in the business and as described further herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants, agreements, representations and warranties contained herein, the parties hereto do hereby agree as follows:

## ARTICLE I
## BUSINESS ACQUISITION

1.1    Sale of Assets by Seller.    Subject to the terms and conditions set forth in this Agreement, at the Closing (as defined herein), Seller will sell, convey, transfer, assign and deliver to Buyer, and Buyer will purchase from Seller, exclusive right, title and interest, free and clear of all liens, security interests and encumbrances, the following:

(a)    The laundry and dry cleaning routes consisting of approximately 1,267 customers in numerous zip codes with 2014 revenue in the approximate amount of $649,000.00. These routes are commonly described by the Seller as routes D, E, J, R and S. In addition, Seller will convey to the Buyer all customer lists, contact information and the Seller's business records that pertain to the assets being sold herein.

1.2    Right of Inspection/As-Is Purchase. From date hereof and until Closing, Buyer shall have the following rights of inspection:

(a)    Inspection of Assets. Prior to closing, Buyer shall have the right to inspect the Seller's books and records pertaining to the Assets to be acquired by Buyer.

*Exhibit 1*

(b)     Except as to matters specifically represented herein by Seller, Buyer acknowledges that Seller is making no representations or warranties with respect to the condition of the Assets being sold hereunder, Buyer shall be deemed to have accepted said Assets "As-Is", "With All Faults" and "Subject to all Applicable Governmental Regulations".   By closing hereunder, Buyer shall further acknowledge that it has inspected all Assets being sold hereunder.

## ARTICLE II
## GOODWILL

2.1   <u>Sale of Goodwill by Seller</u>.  Subject to the terms and conditions set forth in this Agreement, at the closing (as defined herein), Seller will sell, convey, transfer, assign and deliver to Buyer and Buyer will purchase from Seller, along with the Assets referred to in Section 1.1 herein, the goodwill associated with the Assets being sold. Buyer acknowledges that the location and ownership of the property by Seller is unique and has created a "goodwill" which Buyer is purchasing herein which goodwill has been created in part by Seller's operation of the Business at the Premises.

## ARTICLE III
## PURCHASE PRICE; PAYMENT OF ASSETS AND PURCHASE PRICE ADJUSTMENT

3.1   <u>Purchase Price</u>. The total consideration to be paid by Buyer to the Seller for the sale and transfer of the Assets shall be the total of the following:

(a) The Buyer shall pay $400,000.00 for the assets being sold.  At Closing, the Buyer will deliver available funds to the Seller in the amount of $400,000.00.

(b) The Buyer shall assume no liabilities of the Seller.

## ARTICLE IV
## CLOSING

4.1   <u>Time and Place of Closing</u>.  The Closing on the purchase and sale herein provided (the "Closing") shall take place one day subsequent to Bankruptcy Court approval of the sale transaction described herein.  The Closing shall occur at the offices of the Seller and shall be effective as of the close of business on the actual day of Closing.

4.2   <u>Documents to be Delivered and Actions to be Taken at Closing</u>.  At the Closing, Seller and Buyer, where applicable, shall execute and deliver the following documents and shall take or cause to be taken the following actions:

(a)     A Bill of Sale of Seller, in the form acceptable to Buyer and Seller, conveying the Assets and Routes of Seller purchased by Buyer; and

-2-

(b)     A Bankruptcy Court Order from the United States Bankruptcy Court for the District of Minnesota approving, to the satisfaction of the Buyer, the transaction contemplated herein and authorizing the sale of the Sellers Assets in accordance with this Agreement, free and clear of all liens, judgments and encumbrances of any kind or nature.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer, as of the date hereof and as of the Closing, that:

5.1     Organization and Standing.   Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Minnesota, has all requisite corporate power and authority to own and operate its properties and carry on its business as now conducted.

5.2     Authority, Approval and Enforceability.

(a)     Seller has full corporate power and authority to execute, deliver and perform its obligations under this Agreement and all documents to be executed by Seller in connection with the transactions contemplated hereby and all corporate action, including approval by the Board of Directors and shareholders of Seller necessary for such execution, delivery and performance has been duly taken.

(b)     The execution and delivery by Seller of this Agreement and all documents to be executed in connection with the transactions contemplated hereby do not, and the performance and consummation by Seller of the transactions contemplated by this Agreement will not, result in any conflict with, breach or violation of or default, termination, forfeiture or lien under (or upon the failure to give notice or the lapse of time, or both, result in any conflict with, breach or violation of or default, termination, forfeiture or lien under) any terms or provisions of Seller's Articles of Incorporation or Bylaws, each as amended, or any statute, rule, regulation, judicial or governmental decree, order or judgment, agreement, lease or other instrument to which Seller is a party or to which its assets are subject or is likely to have a material adverse effect on the Business or the Assets.

(c)     This Agreement and all documents to be executed by Seller in connection with the transactions contemplated hereby are, and upon due execution and delivery by the parties thereto will be, legal, valid and binding

-3-

obligations of Seller, enforceable against them in accordance with their respective terms.

(d)     To the best knowledge of Seller, Seller is in full compliance with all applicable federal, state, and local regulations, statutes and ordinances which regulate the use of the Premises as a retail and commercial dry cleaning and laundry facility and operation of the Business by Seller.

5.3     <u>Title to Assets</u>. Seller has good and marketable title to the Assets and on or prior to Closing all Assets purchased by Buyer will be free and clear of any and all liens, charges, easements, mortgages, pledges, claims of ownership, security interests, levies, attachments, restrictions and other encumbrances.

5.4     "AS IS" Sale. All Assets are being sold to Buyer in an "AS IS, WHERE IS" condition and Seller specifically disclaims any warranty, express or implied, as to condition except as provided herein, merchantability or fitness of a particular purpose.

5.6     <u>No Liabilities Assumed</u>.  Except as expressly provided herein, Buyer and Seller acknowledge and agree that Buyer shall not assume or become liable for any liabilities, debts payables or other obligations of Seller or any of its agents or employees of any kind or nature arising from or related in any way to the Assets of the Business of Seller which arose prior to the day of Closing except as specifically provided herein.

5.7     <u>Litigation, Adverse Claims, and Related Matters</u>.  There is no pending or threatened litigation (nor, to Seller's knowledge, any claim which may lead to a threat of litigation), proceeding, or investigation (including any environmental, building or safety investigation) relating to any material aspect of Seller's business or Seller's assets, nor is Seller subject to any existing judgment, order or decree which would prevent, impede, or make illegal the consummation of the transactions contemplated in this Agreement or which would have a material adverse effect on Seller's business.

5.8     <u>Continuation of Business</u>.  Seller will keep the Business of Seller substantially intact, including its present operations, physical facilities, working conditions, and relationships with lessors, licensors, suppliers, customers, and employees.  Seller will also assist Buyer in any marketing or communications deemed necessary by Buyer during the transition of the Business to Buyer.

5.9     <u>Completeness of Disclosure</u>.  No representation in this Agreement contains any untrue statement of a material fact or omits to state any material fact the omission of which would be misleading.

-4-

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Sellers, as of the date hereof and as of Closing, that:

6.1     No Violation.   The execution and delivery by Buyer of this Agreement and all documents to be executed by Buyer in connection with the transactions contemplated hereby do not, and the performance and consummation by Buyer of the transactions contemplated by this Agreement will not, result in any conflict with, breach or violation of or default, termination or forfeiture or lien under or upon the failure to give notice or the lapse of time or both result in any conflict with, breach of violation of or default, termination, forfeiture or lien under any statute, rule, regulation, judicial or governmental decree, order or judgment, agreement, lease or other instrument to which Buyer is a party or to which Buyer's assets are subject or is likely to have a material adverse effect on Buyer's assets.

6.2     Authority.   Buyer has full power and authority to execute, deliver and perform its obligations under this Agreement and all documents to be executed by Buyer in connection with the transaction contemplated thereby and delivery and performance has been duly taken.

6.3     Enforceability.   This Agreement and all documents to be executed by Buyer in connection with the transactions contemplated hereby are, and upon the due execution and delivery by the parties thereto will be, legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

6.4     Discussions with Seller.   Buyer has been furnished with such materials and has been given access to such information relating to Seller, the Business, the equipment, inventory and fixtures as Buyer has requested and Buyer has been afforded the opportunity to ask questions and have discussions with the management of Seller regarding the Business and the Assets as Buyer has found necessary.

## ARTICLE VII
## CONDITIONS PRECEDENT TO OBLIGATIONS OF BUYER

The obligations of Buyer to consummate the transactions contemplated by this Agreement, and to be bound by the obligations hereunder after the 7 day due diligence period set forth below, shall be subject, at Buyer's option to waive, to the fulfillment of each of the following conditions:

7.1     Closing Documents. All of the closing documents shall have been executed and delivered by Seller.

7.2     No Breach of Representations, Warranties and Covenants. No breach of any representation, warranty or covenant of Seller under this Agreement shall have occurred.

-5-

7.3    Approval of Bankruptcy Court. Seller providing evidence that the Bankruptcy Court for the District of Minnesota has granted Seller's Motion to approve the sale transaction described herein.

7.4    Non-Competition/Non-Disclosure. All key employees (key employees shall be defined by Buyer at Buyer's sole discretion) and all owners or shareholders of Seller shall execute a two year Non-Competition/Non-Disclosure Agreement with Buyer as is attached as Exhibit B.

7.5    Due Diligence. Buyer shall have 7 days from the date of this agreement to complete due diligence on the Business to Buyer's sole satisfaction.

## ARTICLE VIII
## TERMINATION

8.1    Notwithstanding anything contained in this Agreement to the contrary, Buyer shall, at the election of Buyer, be entitled to terminate this Agreement at any time up to and including Closing in the event of (i) a breach by Seller of any of the covenants, agreements, representations or warranties contained in this Agreement, provided such breach is not cured within a reasonable time after notice of such breach, (ii) any failure of a condition precedent as set forth in Article VII of this Agreement, or (iii) Buyer's discovery through due diligence of anything that would lead Buyer, in Buyer's sole discretion, to believe that it is no longer in Buyer's best interests to enter into this Agreement.   In the event Buyer gives notice to Seller of Seller's breach pursuant to this Article VIII, the Closing shall be postponed for such reasonable period to enable Seller to cure such breach.   In the event Buyer gives notice to Seller of the permanent failure of a condition precedent or that the results of Buyer's due diligence have lead Buyer to terminate this Agreement, the Agreement will be cancelled immediately and each party shall bear that party's own costs associated with the Agreement.

## ARTICLE IX
## DAMAGE INDEMNIFICATION

9.1    Seller and Buyer hereby covenant and agree with the other that they shall indemnify the other, the other's affiliates, directors, officers, employees and agents and each of their successors and assigns, and hold them harmless from, against and in respect of, any and all costs, expenses (including interest which may be imposed in connection therewith and court costs and reasonable fees and disbursements of counsel) (collectively, the "Indemnified Liabilities") resulting from, arising out of or incurred by any of them in connection with any breach of any of the representations or warranties made by such other party hereto or failure or default by such other party hereto in respect of any of the covenants or agreements made herein or anywhere else in this Agreement or any ancillary document including, but not limited to, all documents and agreements delivered pursuant to this Agreement.

## ARTICLE X
## GENERAL

10.1    <u>Expenses, Etc</u>.    Buyer and Seller shall pay their own respective counsel, accountants and other experts.

10.2    <u>Survival</u>.    The respective representations, warranties, covenants, indemnities and agreements of the parties hereto, including those made in or resulting from any certificates, instruments or ancillary documents delivered pursuant to this Agreement or in connection herewith, shall survive Closing under this Agreement and the transactions contemplated herein and continue in full force and effect without limitation.

10.3    <u>Waivers</u>.    No action taken pursuant to this Agreement, including any investigation by or on behalf of either party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein and/or in any ancillary documents.    The waiver by either party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.    The waiver by either party hereto of any condition to its obligations hereunder which is not fulfilled shall not preclude such party from seeking redress from the other party hereto for breach of the terms of this Agreement, except to the extent any such waiver specifically includes any agreement to the contrary.

10.4    <u>Binding Effect; Benefits</u>.    This Agreement shall inure to the benefit of the parties hereto and shall be binding upon the parties hereto and their respective heirs, successors and assigns.    Except as otherwise set forth herein, nothing in this Agreement, expressed or implied, is intended to confer on any person other than the parties hereto or their respective heirs, successors and assigns any rights, remedies, obligations, or other liabilities under or by reason of this Agreement.

10.5    <u>Notices</u>.    All notices, requests, demands and other communications which are required to be or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when delivered in person or transmitted by telex or facsimile or upon receipt after dispatch by certified, or registered first class mail, postage prepaid, return receipt requested, to the party to whom the same is so given or made:

If to the Seller, to:

Waldorf Nevens Cleaners, Inc.

_____

_____

If to the Buyer, to:

Mulberrys, LLC

_____

_____

or to such other address as such party shall have specified by notice to the other party hereto.

10.6    Brokers' Commission.  Seller and Buyer represent and warrant to each other that they have dealt with no brokers, finders or the like in connection with this transaction.

10.7    Entire Agreement.  This Agreement (including the exhibits hereto) supersedes all prior agreements and understandings, oral and written, including, without limitation, between the parties hereto with respect to the subject matter hereof and cannot be changed or terminated orally, and this Agreement, together with related agreements or ancillary documents related hereto executed in connection herewith, constitute the entire agreement of the parties as to the matters set forth herein and therein.

10.8    Headings.  The section and other headings contained in this Agreement are for reference purposes only and shall not be deemed to be a part of this Agreement or to affect the meaning or interpretation of this Agreement.

10.9    Governing Law.  This Agreement shall be construed as to both validity and performance and enforced in accordance with and governed by the laws of the State of Minnesota.  Any legal action relating to this Agreement shall only be brought in a district court of the State of Minnesota.

10.10    Severability.  If any term, covenant, condition, or provision of this Agreement or the application thereof to any circumstance shall be invalid or unenforceable to any extent, the remaining terms, conditions and provisions of this Agreement shall not be affected thereby and each remaining term, covenant, condition, and provision of this Agreement shall be valid and shall be enforceable to the fullest extent permitted by law.  If any provision of this Agreement is so broad as to be unenforceable, such provisions shall be interpreted to be only as broad as is enforceable.

10.11    Amendments.  This Agreement may not be modified or changed except by an instrument or instruments in writing signed by the Buyer and the Seller, their respective successors in interest.

10.12    Assignment.  Buyer may not assign Buyer's interest in this Purchase Agreement without Seller's consent.

10.13    Attorneys' Fees.  If a dispute arises among the parties as a result of which an action is commenced to interpret or enforce any of the terms of this Agreement, the losing or

defaulting party or parties shall pay to the prevailing party or parties reasonable attorneys' fees, costs and expenses incurred in connection with prosecution or defense of such action.

10.14  Counterparts.  This Agreement may be executed in any number of counterparts, each of which when so executed shall constitute an original, but all of which together shall constitute one agreement.

10.15  Accounts Receivable.  All Accounts Receivable owned by Seller and billed by Seller as of the Closing Date shall remain the property of the Seller and shall be collected by Seller.  In the event Buyer inadvertently receives any funds belonging to Seller, Buyer will immediately deliver the same to the Seller.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written.

**SELLER:**

Waldorf Nevens Cleaners, Inc.
a Minnesota corporation

By:_____
       John Zahhos
       Its: President

**BUYER:**

Mulberrys, LLC
a Delaware limited liability company

By:_____
       Dan Miller
       Its: President

P

defaulting party or parties shall pay to the prevailing party or parties reasonable attorneys' fees, costs and expenses incurred in connection with prosecution or defense of such action.

10.14   <u>Counterparts</u>.   This Agreement may be executed in any number of counterparts, each of which when so executed shall constitute an original, but all of which together shall constitute one agreement.

10.15   <u>Accounts Receivable.</u>   All Accounts Receivable owned by Seller and billed by Seller as of the Closing Date shall remain the property of the Seller and shall be collected by Seller.   In the event Buyer inadvertently receives any funds belonging to Seller, Buyer will immediately deliver the same to the Seller.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written.

**SELLER:**

Waldorf Nevens Cleaners, Inc.
a Minnesota corporation

By:_____
     John Zahhos
     Its:  President

**BUYER:**

Mulberrys, LLC
a Delaware limited liability company

By:_____
     Dan Miller
     Its:  President

-9-

Scanned by CamScanner

Total Routes

| Zip Codes | Clients | Revenue |
| --- | --- | --- |
| 32550 | 1267 | 649,104.35 |
| 54024 | | |
| 55014 | | |
| 55025 | | |
| 55044 | | |
| 55068 | | |
| 55077 | | |
| 55101 | | |
| 55102 | | |
| 55104 | | |
| 55105 | | |
| 55107 | | |
| 55108 | | |
| 55111 | | |
| 55112 | | |
| 55113 | | |
| 55116 | | |
| 55117 | | |
| 55118 | | |
| 55119 | | |
| 55120 | | |
| 55121 | | |
| 55122 | | |
| 55123 | | |
| 55124 | | |
| 55126 | | |
| 55127 | | |
| 55129 | | |
| 55305 | | |
| 55311 | | |
| 55313 | | |
| 55315 | | |
| 55316 | | |
| 55318 | | |
| 55327 | | |
| 55330 | | |
| 55331 | | |
| 55340 | | |
| 55343 | | |
| 55344 | | |

EXHIBIT A

55345
55346
55347
55357
55359
55362
55364
55372
55375
55379
55384
55386
55391
55400
55401
55402
55403
55404
55405
55406
55407
55408
55409
55410
55412
55413
55414
55415
55416
55417
55418
55419
55420
55421
55422
55423
55423
55424
55426
55427
55428
55429
55434
55435
55436
55437
55438

EXHIBIT A

55439
55440
55441
55442
55445
55446
55447
55450
55455

EXHIBIT A

| Route E | | | Route S | | | Route J | |
|---|---|---|---|---|---|---|---|
| Revenue | 117117.2 | | | 209398.6 | | | 65192.94 |
| | | | | | | | |
| Zip Codes | Clients | | Zip Codes | Clients | | Zip Codes | |
| | | | | | | | |
| 55024 | 134 | | 55014 | 469 | | 55343 | |
| 55112 | | | 55025 | | | 55401 | |
| 55305 | | | 55101 | | | 55403 | |
| 55318 | | | 55102 | | | 55404 | |
| 55330 | | | 55104 | | | 55405 | |
| 55343 | | | 55105 | | | 55408 | |
| 55344 | | | 55107 | | | 55414 | |
| 55346 | | | 55108 | | | 55415 | |
| 55362 | | | 55112 | | | 55419 | |
| 55372 | | | 55113 | | | 55422 | |
| 55391 | | | 55116 | | | 55426 | |
| 55410 | | | 55118 | | | 55455 | |
| 55416 | | | 55123 | | | | |
| 55424 | | | 55126 | | | | |
| 55435 | | | 55127 | | | | |
| 55436 | | | 55129 | | | | |
| 55439 | | | 55400 | | | | |
| | | | 55401 | | | | |
| | | | 55402 | | | | |
| | | | 55403 | | | | |
| | | | 55404 | | | | |
| | | | 55412 | | | | |
| | | | 55413 | | | | |
| | | | 55414 | | | | |
| | | | 55415 | | | | |
| | | | 55418 | | | | |
| | | | 55419 | | | | |
| | | | 55421 | | | | |
| | | | 55422 | | | | |
| | | | 55423 | | | | |
| | | | 55427 | | | | |
| | | | 55439 | | | | |
| | | | 55440 | | | | |
| | | | 55442 | | | | |
| | | | 55446 | | | | |

EXHIBIT A

| Route R | | | Route D | |
| 71714.56 | | | 185681.1 | |
| Clients | Zip Codes | Clients | Zip Codes | Clients |
| 145 | 32550 | 143 | 54024 | 376 |
| | 55068 | | 55044 | |
| | 55116 | | 55068 | |
| | 55126 | | 55077 | |
| | 55305 | | 55111 | |
| | 55311 | | 55112 | |
| | 55313 | | 55117 | |
| | 55315 | | 55119 | |
| | 55316 | | 55120 | |
| | 55331 | | 55121 | |
| | 55340 | | 55122 | |
| | 55343 | | 55123 | |
| | 55344 | | 55124 | |
| | 55345 | | 55311 | |
| | 55346 | | 55327 | |
| | 55347 | | 55340 | |
| | 55357 | | 55344 | |
| | 55359 | | 55347 | |
| | 55364 | | 55391 | |
| | 55375 | | 55403 | |
| | 55379 | | 55405 | |
| | 55384 | | 55406 | |
| | 55386 | | 55407 | |
| | 55391 | | 55408 | |
| | 55401 | | 55409 | |
| | 55403 | | 55410 | |
| | 55405 | | 55412 | |
| | 55410 | | 55416 | |
| | 55416 | | 55417 | |
| | 55419 | | 55419 | |
| | 55426 | | 55420 | |
| | 55434 | | 55422 | |
| | 55437 | | 55423 | |
| | 55438 | | 55428 | |
| | 55447 | | 55429 | |
| | | | 55434 | |
| | | | 55435 | |
| | | | 55436 | |
| | | | 55437 | |
| | | | 55438 | |
| | | | 55441 | |

EXHIBIT A

55442
55445
55446
55447
55450

EXHIBIT A

## NON-DISCLOSURE AND NON-COMPETITION AGREEMENT

**THIS AGREEMENT** entered into as of _____ by and among Mulberrys, LLC., a Delaware corporation ("Buyer"), Waldorf Nevens Inc., a Minnesota corporation ("Seller"), and John Zahhos, the sole shareholder of Waldorf Nevens ("Zahhos").

A.        Subject to and in accordance with the terms of the Asset Purchase Agreement made effective as of _____, by and between Seller and Buyer ("Purchase Agreement") Seller and Zahhos agreed to execute a Non-Competition/Non-Disclosure Agreement with Buyer (this "Agreement"); and

B.        Seller acknowledges that Seller and Zahhos's agreement to the terms set forth herein are a material condition to Buyer's entering into the Purchase Agreement.

C.        Capitalized terms used but not defined in this Agreement have the meaning given in the Purchase Agreement.

NOW, THEREFORE, in consideration of the background and the payment of the Purchase Price provided for in the Purchase Agreement, the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1.        **Confidential Information**.  For purposes of this Agreement, the term "Confidential Information" shall be deemed to include all information regarding Seller or Buyer that Seller or Zahhos have had access to, whether transmitted orally, in writing, by demonstration, electronically or otherwise.  Confidential Information may include, by way of example but without limitation, verbal information and ideas, business plans, designs, specifications, instructions, samples, schedules, test market and national volumes, product and package designs and sizes, pricing, inventions, ideas, manufacturing and marketing plans and other data, and related technical and commercial information relating to either of Buyer or Seller or their business.  Confidential Information does not include information that Seller or Zahhos can demonstrate to be:  (i) generally available to the public through no act or omission on the part of Seller or Zahhos.

2.        **Obligations of Confidentiality and Nonuse**.  Seller and Zahhos shall (a) receive and hold the Confidential Information in strict confidence; (b) take such steps as may be reasonably necessary to prevent the disclosure of Confidential Information to others with not less than the same degree of care which Seller and Zahhos uses to prevent the unauthorized use, dissemination or publication of their own most valuable confidential and proprietary information (but with at least the same degree of care used by a reasonably prudent business person); (c) not disclose such Confidential Information to any third party for any purpose whatsoever without (i) the prior written approval from Buyer, and (ii) the written agreement on the part of such third party to be bound by the terms of this Agreement; (d) acknowledge that the Confidential Information is and will at all times remain the property of Buyer; and (e) not use the Confidential Information for any personal or professional benefit or gain.

Further to the requirements of 2(e) above, Seller and Zahhos agrees that for a period of two (2) years following the Closing Date, Seller and Zahhos shall not compete, directly or indirectly, in any manner with Buyer with respect to the dry cleaning routes being sold by the Seller to the Buyer or any other direct-to-consumer dry cleaning and laundry business, not including commercial, wholesale laundry, or dry cleaning and laundry drop-off stores.  Seller and Zahhos shall not, directly or indirectly, solicit any current or former employee or contractor of Buyer to leave Buyer and compete against it, solicit any former customer or client of Buyer, or otherwise solicit any such business.  This non-competition and non-solicitation agreement shall include any actions by Seller and Zahhos, either directly or indirectly, as a contractor, consultant, director, officer, employee, or as an owner of a corporation or interest in a limited liability company or partnership.  In the event a court of law finds this section to be unenforceable, the parties agree that the section shall be modified to be enforceable.

Seller and Zahhos shall notify Buyer in writing immediately upon the occurrence of any unauthorized release or other breach of which it is aware with respect to any Confidential Information.

3.        **Return of Materials**.  Upon request of Buyer, Seller and Zahhos shall return to Buyer or destroy all documents and other writings supplied by the Buyer, together with all copies of any such documents or other writings, and an officer of Seller and Zahhos shall certify to the return or destruction of all tangible Confidential Information and references thereto and the destruction of any references thereto on electronic or other intangible media.

**EXHIBIT B**

4. **Duration.** Except as the Buyer may otherwise direct in writing, Seller and Zahhos's obligations hereunder shall remain in effect with respect to any individual item of Confidential Information until such time as the item enters the public domain through no fault of the Seller and Zahhos.

5. **Injunctive Relief.** Seller and Zahhos acknowledges that a breach by it of any one or more of the terms of this Agreement will cause irreparable harm to Buyer and that damages would be difficult to determine. Accordingly, in the event of a default, Buyer shall be entitled to, in addition to all other legal remedies available to the Buyer, injunctive relief restraining Seller and Zahhos from any further or continued breach of its obligations hereunder. Buyer shall have no obligation to post bond prior to obtaining such injunctive relief. In addition, Buyer shall be entitled to reasonable attorneys' fees and costs incurred by it in enforcing any remedies available to Buyer hereunder.

6. **No Grant of Rights.** No license or intellectual property right is conveyed by this Agreement. Any information, ideas, discoveries, works of authorship, designs or inventions, whether patentable or unpatentable, that result from the discussions under this Agreement and related to the purpose of this Agreement will remain the property of Buyer. This Section shall survive termination of this Agreement.

7. **Disclaimers**. This Agreement shall not be construed or interpreted as obligating either party to enter into a further agreement or contractual arrangement with the other party in any way. No rights or obligation other than those expressly recited herein are to be implied from this Agreement. In particular, unless expressly recited herein, no right or license is hereby granted to the Seller and Zahhos, directly or indirectly, to use any patent, trade secret, trademark, copyright or technology now owned, controlled or held by, or which may be obtained by, or which is or may be licensable by Buyer. Buyer makes no representation or warranty regarding the accuracy or completeness of the Confidential Information.

8. **Governing Law and Jurisdiction.** The parties agree that any dispute arising out of or relating to this Agreement shall be governed in accordance with the laws of the State of Minnesota without regard to the conflict of laws provisions thereof, and all disputes shall be venued exclusively in the state or federal courts sitting in the State of Minnesota.

9. **Waiver.** Any failure on the part of Buyer to insist upon the performance of this Agreement or any part thereof, shall not constitute a waiver of any right under this Agreement.

10. **No Assignment**. Seller and Zahhos shall not assign this Agreement or any of its rights or obligations hereunder without obtaining prior written consent of Buyer.

11. **Entire Agreement; Amendments**. This Agreement represents the entire Agreement between the parties regarding its subject matter and supersedes all prior discussions, agreements and understandings of every kind and nature between them regarding the same. This Agreement shall not be amended except by an agreement in writing executed by the parties hereto.

12. **Severability.** Should any individual provisions of this Agreement be or become invalid, this shall not affect a validity of the Agreement as a whole. Any invalid provision shall be replaced by such valid provisions as comes closest to the economic intentions of the parties.

13. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same instrument. Signature pages delivered by facsimile or email to this Agreement or any document delivered hereunder shall be binding to the same extent as an original.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

**BUYER**
Mulberrys, LLC.

_____
Daniel Miller, Its President

**SELLER**
Waldorf Nevens, Inc.

_____
John Zahhos, Its President

_____
John Zahhos, Personally

4.   **Duration.** Except as the Buyer may otherwise direct in writing, Seller and Zahhos's obligations hereunder shall remain in effect with respect to any individual item of Confidential Information until such time as the item enters the public domain through no fault of the Seller and Zahhos.

5.   **Injunctive Relief**. Seller and Zahhos acknowledges that a breach by it of any one or more of the terms of this Agreement will cause irreparable harm to Buyer and that damages would be difficult to determine.  Accordingly, in the event of a default, Buyer shall be entitled to, in addition to all other legal remedies available to the Buyer, injunctive relief restraining Seller and Zahhos from any further or continued breach of its obligations hereunder.  Buyer shall have no obligation to post bond prior to obtaining such injunctive relief.  In addition, Buyer shall be entitled to reasonable attorneys' fees and costs incurred by it in enforcing any remedies available to Buyer hereunder.

6.   **No Grant of Rights.**  No license or intellectual property right is conveyed by this Agreement.  Any information, ideas, discoveries, works of authorship, designs or inventions, whether patentable or unpatentable, that result from the discussions under this Agreement and related to the purpose of this Agreement will remain the property of Buyer.  This Section shall survive termination of this Agreement.

7.   **Disclaimers**.  This Agreement shall not be construed or interpreted as obligating either party to enter into a further agreement or contractual arrangement with the other party in any way.  No rights or obligation other than those expressly recited herein are to be implied from this Agreement.  In particular, unless expressly recited herein, no right or license is hereby granted to the Seller and Zahhos, directly or indirectly, to use any patent, trade secret, trademark, copyright or technology now owned, controlled or held by, or which may be obtained by, or which is or may be licensable by Buyer.  Buyer makes no representation or warranty regarding the accuracy or completeness of the Confidential Information.

8.   **Governing Law and Jurisdiction.**  The parties agree that any dispute arising out of or relating to this Agreement shall be governed in accordance with the laws of the State of Minnesota without regard to the conflict of laws provisions thereof, and all disputes shall be venued exclusively in the state or federal courts sitting in the State of Minnesota.

9.   **Waiver.**  Any failure on the part of Buyer to insist upon the performance of this Agreement or any part thereof, shall not constitute a waiver of any right under this Agreement.

10.   **No Assignment**.  Seller and Zahhos shall not assign this Agreement or any of its rights or obligations hereunder without obtaining prior written consent of Buyer.

11.   **Entire Agreement; Amendments**. This Agreement represents the entire Agreement between the parties regarding its subject matter and supersedes all prior discussions, agreements and understandings of every kind and nature between them regarding the same.  This Agreement shall not be amended except by an agreement in writing executed by the parties hereto.

12.   **Severability.**  Should any individual provisions of this Agreement be or become invalid, this shall not affect a validity of the Agreement as a whole.  Any invalid provision shall be replaced by such valid provisions as comes closest to the economic intentions of the parties.

13.   **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same instrument.  Signature pages delivered by facsimile or email to this Agreement or any document delivered hereunder shall be binding to the same extent as an original.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**BUYER**
Mulberrys, LLC.

_____
Daniel Miller, Its President

**SELLER**
Waldorf Nevens, Inc.

_____
John Zahhos, Its President


_____
John Zahhos, Personally

2

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 15-40067 |
| Waldorf Nevens Cleaners, Inc., | Chapter 11 |
| Debtor. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

This Memorandum is submitted in support of Debtor's motion to sell assets free and clear of liens, claims and encumbrances. The facts supporting the relief requested are set forth in the verified Motion.

### I.    THE PROPOSED SALES ARE A REASONABLE EXERCISE OF BUSINESS JUDGMENT AND WARRANTS APPROVAL PURSUANT TO 11 USC § 363

The proposed sales are in the best interests of the estate. Sales are governed by 11 USC §363(b)(1), which provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." In determining whether to authorize the sale of property, courts evaluate whether sound business purpose underlies the proposed sale.[1] When a sound business purpose exits, and the sale is made in good faith, a sale pursuant to § 363(b)(1) of the Bankruptcy Code should be approved. The burden of establishing a rational business justification rests with the movant.[2] However, once such a showing is made, a presumption will attach that the decision was made on an informed

---

[1]   *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999). *See also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 178 (D. Del. 1991) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale); *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Four B. Com. v. Food Barn Stores, Inc.* (In re Food Barn Stores, Inc.), 107 F.3d 558, 567 n.16 (8th Cir. 1997); *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Crystalin LLC*, 293 B.R. 455,463-64 (8th Cir. B.A.P. 2003); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. DeL. 1991).

[2]   *Lionel*, 722 F.2d at 1070-71.

1.

basis, in good faith and in the honest belief that the action was in the best interest of the

company.[3]

In the instant case, Debtor submits that sound business justification exists which merits

judicial approval of the proposed sales.  To the best of Debtor's knowledge, the sale prices are

reasonable and negotiated at arm's length.  Therefore, Debtor requests the Court approve the

proposed sales as they are fair and reasonable under the circumstances.

## II.    THE FACTS SUPPORT A SALE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

In order to facilitate the sale, a prompt and efficient sale needs to be made free and clear

of liens, claims and encumbrances pursuant to §363(f) of the Bankruptcy Code, with any such

liens, claims, encumbrances, or interests to attach to the sale proceeds thereof.  Specifically,

§363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and
clear of any interest in such property of an entity other than the estate, only if—

(1)     applicable non-bankruptcy law permits sale of such property free and clear
of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is
greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to
accept a money satisfaction of such interest.

To facilitate the proposed sales, Debtor seeks authorization to sell free and clear of any

and all liens, claims and encumbrances, with such liens, claims and encumbrances <u>to attach to</u>

<u>the net proceeds of such sale</u> with the same rights and priorities therein.  A sale under §363(f)

---

[3]     *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.* (In re Integrated
Resources, Inc.), 147 B.R. 650,656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993).

only necessitates meeting one of the five conditions of the disjunctively written Bankruptcy Code section.[4]

Under §363(f)(2) of the Bankruptcy Code, a sale free and clear of all liens, claims, encumbrances and interests is permissible if all parties asserting liens on or other interests in the assets to be sold consent. Debtor is providing proper notice of this transaction and giving all interested parties an opportunity to object. Accordingly, the requirements of §363(f)(2) are satisfied with such notice and the absence of objection.[5] Further, to the extent consent is not obtained, §363(f)(5) permits lien extinguishment if any party asserting an interest in the assets could be compelled to accept <u>monetary satisfaction</u> of such interest in a legal or equitable proceeding without full satisfaction of the debt. Any such claims to the Debtor's assets could be resolved by such means. Accordingly, the proposed sale satisfies the statutory prerequisites of §363(f) of the Bankruptcy Code and should be given such status.

### III.    <u>BUYER IS ENTITLED TO GOOD FAITH STATUS PURSUANT TO § 363</u>

Section 363(m) of the Bankruptcy Code protects the sale of a debtor's property to a good faith purchaser. Section 363(m) provides,

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit has noted that the phrase "encompasses one who purchases in 'good faith' and 'for value.'"[6]

---

[4]    11 U.S.C. §363(f). *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive. Therefore, if any of the five conditions of §363(f) are met, the Trustee has the authority to conduct the sale free and clear of all liens.").

[5]    *See Veltman v. Whetzal*, 93 F. 3d 517, 521 (8th Cir. 1986) *citing In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988); *In re Shary*, 152 B.R. 724, 725-26 (Bankr. N.D. Ohio 1993).

[6]    *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.

Further, the recognized type of misconduct that would destroy a purchaser's good faith status involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."[7]  The terms and conditions of the sales of the Debtor's assets to the Buyers were negotiated by Debtor at arm's-length and in good faith. Accordingly, Debtor requests the Court deem the Buyers to be acting in good faith and entitled to all protections afforded therein.

To successfully implement the foregoing, Debtor seeks a waiver of the ten-day stay under Rule 6004.

### IV.    CONCLUSION

For the foregoing reasons, Debtor respectfully requests the Court enter an order granting the relief sought in the motion.

Respectfully submitted,


Dated:  May 12, 2015.             /e/ Steven B. Nosek
                                  Steven B. Nosek (79960)
                                  2855 Anthony Lane South, Suite 201
                                  St. Anthony, MN 55418
                                  snosek@noseklawfirm.com
                                  (612) 335-9171

                                  Attorney for Debtor

---

[7]    *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:                                                         BKY No.: 15-40067
                                                                      Chapter 11

**Waldorf Nevens Cleaners, Inc.,**

     Debtor.

---

### CERTIFICATE OF SERVICE

---

I hereby certify that on May 12, 2015, I caused a copy of **Notice of Expedited Hearing and motion to Sell Assets Free and Clear of Liens, Claims, Encumbrances; Verification; Memorandum of Law; and Proposed Order** to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

    US Trustee: ustpregion12.mn.ecf@usdoj.gov, ecfbkup@comcast.net
    Colin Kreuziger:  Colin.Kreuziger@usdoj.gov
    Bradley J. Halberstadt:  bankruptcy@szjlaw.com
    Daniel C. Beck:  debeck@winthrop.com, tcooke@winthrop.com
    Roger N. Knutson:  rknutson@ck-law.com, jolson@ck-law.com, aschutt@ck-law.com
    John C. Beatty:  jbeatty@dunlaplaw.com

    I further certify that I caused a copy of the **Notice of Expedited Hearing and motion to Sell Assets Free and Clear of Liens, Claims, Encumbrances; Verification; Memorandum of Law; and Proposed Order** to be faxed and/or emailed and/or mailed by US Mail to the following:

| | | |
|---|---|---|
| AmTrust North America<br>5800 Lombardo Center<br>Cleveland OH 44131<br>Fax: 1-800-487-9654 | Capital One<br>PO Box 30285<br>Salt Lake City, UT 84130-0285 | Waldorf Nevens Cleaners, Inc.<br>Jzahhos@waldorfnevens.com<br>pberry@waldorfnevens.com |
| CenterPoint Energy<br>Attn:  Chris Webb – Credit Supervisor<br>PO Box 4567<br>Houston TX 77210-4671<br>Fax: 713-207-4224 | AT&T Mobility<br>PO Box 6438<br>Carol Stream IL 60197-6438 | Dex Media East, Inc.<br>Attn: W. Mattox-BKY Dept<br>PO Box 78041<br>Phoenix AZ 85062-8041<br>Fax:  309-679-4491 |
| Don's Leather<br>3713 E Lake Street<br>Minneapolis MN 55406<br>Fax:  612-721-4833 | Egan Electrical Contractors Inc<br>PO Box 1150-27<br>Minneapolis MN 55480 | Abacus Copy Systems, Inc.<br>615 Southview Blvd<br>S. St. Paul MN 55075-2345 |
| Hennepin County – Vicci Lee<br>A600 - Government Center<br>300 S 6th Street<br>Minneapolis MN 55487<br>Vicci.lee@hennepin.us | J&L Distributing, Inc.<br>180 Kari Glen Drive<br>Fayetteville GA 30215 | LBP Mechanical<br>315 Royalston Avenue N<br>Minneapolis MN 55406<br>Fax:  612-333-6122 |

| | | |
|---|---|---|
| Lurie Besikof Lapidus & Co LLP<br>2501 Wayzata Blvd<br>Minneapolis MN 55405-2197<br>Fax: 612-377-1325 | Mechanical Systems, Inc.<br>800 Weaver Lake Rd #A<br>Dundas MN 55019<br>Fax: 507-645-0292 | Minnesota Revenue<br>Attn: Derek Johnson<br>BKY Section<br>PO Box 64447<br>St. Paul, MN 55164-0447<br>Derek.d.Johnson@state.mn.us |
| Pitney Bowes Purchase Power<br>PO Box 856042<br>Louisville KY 40285-6042<br>Fax: 203-460-5155 | Precision Machine Control<br>474 Minnehaha Ave W #102<br>Saint Paul MN 55103<br>Fax: 651-487-5814 | Quickway Rigging and<br>Transfer<br>7800 Central Ave NE<br>Minneapolis MN 55432<br>Fax: 763-784-3556 |
| Robert W. Schaefer<br>5529 1st Ave S<br>Minneapolis MN 55419<br>bobwayne@q.com | TRC Glass Company<br>12455 Ridgedale Dr #103<br>Minnetonka MN 55305<br>Fax: 612-359-7612 | Weinberg Supply &<br>Equipment<br>Attn: Moshe Weinberg<br>7434 W 27th Street<br>Minneapolis MN 55426<br>Fax: 952-920-2911 |
| Adco Products, Inc.<br>1909 W Oakridge Dr<br>Albany GA 31707-5261 | Advance Realty<br>850 Decatur Ave N<br>Golden Valley MN 55427-4348 | American Express<br>c/o Beckett and Lee LLP<br>PO Box 3001<br>Malvern PA 19355-0701 |
| Ameripride<br>PO Box 518<br>Bemidji MN 56619-0518 | Apple Business Forms, Inc.<br>PO Box 580650<br>Minneapolis MN 55458-0650 | B&I Roofing<br>312 42nd Ave NE<br>Columbia Heights MN 55421 |
| Bernick Lifson PA<br>C/o Mercedes Gustafson Esq<br>5500 Wayzata Blvd #1200<br>Minneapolis MN 55416-1251 | Bank of America<br>PO Box 982238<br>El Paso TAX 79998-2238 | Blue Cross Blue Shield<br>PO Box 64369<br>Saint Paul MN 55164 |
| Boiler Services<br>10327 Flanders St NE<br>Blaine MN 55449-5711 | Bona Bros. Auto & Truck Svc.<br>5333 University Ave NE<br>Fridley MN 55421 | Bowers Trucking<br>Attn: Jeff<br>611 Lincoln Blvd.<br>Oroville CA 95966 |
| CA Communications, Inc.<br>294 Grove Lane East<br>Wayzata MN 55391-1777 | Chase<br>Cardmember Service<br>PO Box 15298<br>Wilmington DE 19850-5298 | City of St. Louis Park<br>PO Box 16801<br>St. Louis Park MN 55416-6800 |
| ComCast<br>PO Box 3001<br>Southeastern PA 19398-3001 | Compressed Air Concepts LLC<br>9815 W 74th St<br>Eden Prairie MN 55344 | Corval Group<br>Corval Constructors, Inc.<br>1633 Eustis Street<br>St. Paul, MN 55108-1219 |
| Cramer Co.<br>56 Chauncey Ave<br>Toronto Canada<br>M8Z 2Z4 | Dan Dufresne<br>207 Church Street E<br>Cologne MN 55322-9343 | David Miller<br>2845 Quebec Ave S<br>Minneapolis MN 55426 |
| David Shoenecker<br>3109 Hennepin Avenue S<br>Minneapolis MN 55408 | Dayspring Windows<br>701 Utah Ave S<br>Golden Valley MN 55426 | Delta Dental of Minnesota<br>NW 5772<br>PO Box 1450<br>Minneapolis MN 55485-5772 |
| Ditter Cooling & Heating | Dorothy Lee | Emergency Physicians Prof |

| | | |
|---|---|---|
| 820 Tower Drive<br>Columbia Heights MN 55421 | 932 Stratford Lane W<br>Burnsville MN 55337-6870 | Asso<br>7301 Ohms Lane, Suite 650<br>Minneapolis MN 55439-4000 |
| Emergency Physicians, P.A.<br>5435 Feltl Rd<br>Minnetonka MN 55343 | Emmett J. Arnold IV<br>30 Woodruff Street<br>McDonough GA 30253-2144 | Fafinski Mark & Johnson PA<br>Flagship Corporate Center<br>775 Prairie Center Dr, #400<br>Eden Prairie MN 55344 |
| Festivities<br>3969 County Road 116<br>Medina MN 55340 | First National Bank of Omaha<br>1620 Dodge St, Stop Code 3105<br>Omaha NE 68197-0002 | Ford Motor Credit Co<br>PO Box 62180<br>Colorado Springs CO 80962-2180 |
| Forklifts of Minnesota, Inc.<br>2201 W 94th Street<br>Bloomington MN 55431 | Fremont Industries, Inc.<br>PO Box 67<br>Shakopee MN 55379 | G&K Linnen<br>PO Box 842385<br>Boston MA 02284-2365 |
| Grainger<br>Dept 822448965<br>Palatine IL 60038-0001 | Holiday<br>5501 W Old Shakopee Rd<br>Minneapolis, MN 55437-3128 | IDEARC Media Corp<br>PO Box 619009<br>Dallas TX 75261-9009 |
| Internal Revenue Service<br>Centralized Insolvency Operations<br>PO Box 7346<br>Philadelphia PA 19101-7346 | Jensen USA<br>Dept CH 19533<br>Palatine IL 60055-9533 | Kennedy Scales, Inc.<br>11485 Xeon St NW<br>Minneapolis, MN 55448-3150 |
| Kilmer Electric Co Inc<br>5141 Lakeland Ave N<br>Crystal MN 55429 | Liberty Systems<br>3080 Centerville Rd<br>Saint Paul MN 55117 | Lightedge Solutions<br>215 10th Street<br>Des Moines IA 50309 |
| Los Galos 2 Inc.<br>1112 E Lake St<br>Minneapolis MN 55407-4005 | Metro Welding Supply LLC<br>3021 Central Ave NE<br>Minneapolis MN 55418-2197 | Mega-Tek<br>1390 Jefferson Avenue<br>Saint Paul MN 55105-2409 |
| Metropolitan Mech. Contractors<br>7340 Washington Ave S<br>Eden Prairie MN 55344-3514 | Mitel Technologies, Inc.<br>Department 7081<br>Carol Stream IL 60122-7081 | Money Mailer<br>PO Box 27125<br>Golden Valley MN 55427 |
| Moorehead Machinery & BoilerCo<br>3477 University Ave NE<br>Minneapolis MN 55418 | Motor Control Repair<br>5240 Xenia Ave N<br>Crystal MN 55429 | Muska Electric Company<br>1985 Oakcrest Avenue<br>Roseville MN 55113 |
| NSO<br>Dba Xcel Energy<br>3215 Commerce St<br>LaCrosse WI 546093-1755 | Nalco Company<br>PO Box 70716<br>Chicago IL 60673-0716 | Palanisami & Associates, Inc.<br>5661 International Parkway<br>Minneapolis MN 55428 |
| Pfifner Heating & Air Cond.<br>6301 Welcome Ave N #26<br>Brooklyn Park MN 55429 | Phelan Manufacturing Corp.<br>2523 Minnehaha Ave<br>Minneapolis MN 55404 | Pirtek<br>1409 Cliff Road E<br>Burnsville MN 55337 |
| Popp.com<br>620 Mendelssohn Ave N<br>Golden Valley MN 55427-0110 | Positek, Inc. DCCS<br>1210 Stanbridge Street<br>Norristown PA 19401 | Quality Forklift Sales & Svc<br>587 Citation Drive<br>Shakopee MN 55379 |
| Quality Refrigeration<br>6237 Penn Avenue South<br>Suite 100<br>Richfield MN 55423 | Republic Services<br>PO Box 9001154<br>Louisville KY 40290-1154 | Robert B. Hill Company<br>7101 Oxford Street<br>St. Louis Park MN 55426 |
| Storm Industries<br>1500 S Western Ave | Syfan Manufacturing Inc<br>Attn: Candi Waterfield | St. Croix Promotions & Retail<br>7874South 12th Avenue |

| | | |
|---|---|---|
| Chicago IL 60608-1828 | PO Box 203<br>Everetts NC 27825-0203 | Minneapolis MN 55420 |
| Sprint Nextel Correspondence<br>Attn:  BKY Dept<br>PO Box 7949<br>Overland Park KS 66207-0949 | Sterling Welding Company, Inc.<br>208 9th Ave N<br>Minneapolis MN 55411 | The Hartfod<br>PO Box 14219<br>Lexington KY 40512-4219 |
| Then Installation, Inc.<br>217 Summit Ave N<br>Sauk Rapids MN 56379 | Thomas Nybeck LLC<br>3600 American Blvd #400<br>Bloomington MN 55431 | Tingue Brown & Co.<br>PO Box 824619<br>Philadelphia PA 19182-4619 |
| Turf Tigers LLC<br>14331 284th Ave NW<br>Zimmerman MN 55398 | Twin City Group<br>4500 Park Glen Rd #400<br>Minneapolis MN 55416 | Twin City Linen<br>c/o Terry A. Watkins<br>18166 Faribault Blvd.<br>Faribault MN 55021 |
| Uline<br>PO Box 88741<br>Chicago IL 60680-1741 | Unipress<br>3501 Queen Palm Drive<br>Tampa FL 33619 | Waste Management<br>2625W Grandview Rd #150<br>Phoenix AZ 85023-3109 |
| Zee Medical Service<br>PO Box 911<br>Burnsville MN 55337 | | |

Dated this 12th day of May, 2015.

/e/ Steven B. Nosek
Steven B. Nosek, #79960
2855 Anthony Lane South, Suite 201
St. Anthony, MN 55418
(612) 335-9171
ATTORNEY FOR DEBTOR
snosek@noseklawfirm.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                              Case No. 15-40067

Waldorf Nevens Cleaners, Inc.,                      Chapter 11

        Debtor.

---

### ORDER

---

The Debtor's Motion to sell assets free and clear of liens, claims and encumbrances came

before the Court.  Based on the arguments of counsel, all of the files, records, and proceedings

herein, the Court being fully advised in the premises and accordingly:

**IT IS ORDERED:**

1.      The motion for expedited relief is granted.

2.      The Debtor's Motion to sell assets free and clear of liens, claims and

encumbrances outside the ordinary course of business pursuant to 11 U.S.C. §363(b) is

granted.

3.      All objections filed in response to the motion are overruled to the extent

not resolved by this order.

4.      Notice of the sale and the hearing was proper, fair and equitable under the

circumstances and complied in all respects with the requirements of the Bankruptcy

Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy

Procedure.

5.      The debtor is authorized and empowered to sell the assets in accordance

with the terms of the Asset Purchase Agreements as more fully described in the motion

and the Debtor and the buyers are each entitled to rely upon the provisions of this order in

all respects.

6.       Pursuant to §363(f) of the Bankruptcy Code, the assets shall be transferred to the buyer free and clear of any and all liens, claims, encumbrances and interests of any kind or nature whatsoever and all such liens, claims, encumbrances and interests shall attach to the proceeds of the sale with the same validity, priority, dignity and effect and to the same extent that existed immediately prior to the consummation of the sale and in all cases subject to any and all rights, claims and defenses that the debtor may have with respect thereto.

7.       All persons and entities, including but not limited to, all holders of debt instruments, equity security holders, governmental, tax and regulatory authorities, lenders, consignors, bailers, trade and other creditors, holding claims or interests of any kind or nature whatsoever against the debtor, the bankruptcy estate or the acquired assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the debtor or the acquired assets, are forever barred, estopped, and permanently enjoined from asserting against the buyer, its affiliates, successors or assigns, its property or any item(s) acquired by the buyer, each such person's or entity's claims and interests.

8.       The buyers are purchasing the acquired assets without collusion, in good faith and from an arm's length bargaining position.  The buyers are and shall be deemed to be good faith purchasers under § 363(m) of the Bankruptcy Code and, as such, is and shall be entitled to all of the protections afforded thereby.  Neither the debtor nor the buyers have engaged in any conduct that would cause or permit the sales to be avoided under § 363(n) of the Bankruptcy Code.  In the absence of a stay pending appeal, the buyers will be acting in good faith within the meaning of § 363(m) of the Bankruptcy

2.

Code in closing on the sale of the acquired assets at any time after entry of this Order

notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d).

9.      Debtor is authorized and empowered to take such steps, expend such sums

of money and do such other things as may be necessary to implement and effect the terms

of this Order.

10.      This Court shall retain jurisdiction over any matters related to or arising

from the implementation of this order.

11.      The Debtor is directed to segregate and retain the sum of $200,000.00

from the sale to Mulberrys, LLC pending further Order of the Court.

12.      Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall

take effect immediately upon entry.


Dated:                          _____
                                Michael E. Ridgway
                                United States Bankruptcy Judge